# Aaron Batdorff, Exr. of Mary Behney, Deceased, Plff. in Err., *v.* John Fehler.

In an action to recover insurance moneys received by defendant on a policy on the life of plaintiff's testatrix, where a question of fact was whether defendant was a creditor, and to what extent, of the testatrix, the court cannot affirm, as matter of law, that the taking out of the policy by defendant was a mere speculation and that he is liable for the amount received by him.

In such action it cannot be affirmed, as matter of law, that defendant's claim that he held the policy on a contract with the testatrix to support her during life and bury her after death was a speculation or gambling contract. The proposition involved a question of fact for the jury.

The trial court may decline to receive a point, as submitted too late under its rules, presented by plaintiff's counsel after defendant's counsel had made his concluding argument to the jury but before plaintiff's counsel had begun his argument.

(Argued May 4, 1887. Decided May 16, 1887.)

July Term, 1887, No. 3, E. D., before Mercur, Ch. J., Gordon, Trunkey, Sterrett, and Green, JJ. Error to the Common Pleas of Lebanon County to review a judgment on a verdict for defendant in an action of assumpsit. Affirmed.

Cited in Roller v. Moore, 86 Va. 512, 6 L. R. A. 139, 10 S. E. 241, holding that a creditor to whom a life insurance policy is assigned can hold the proceeds only to the extent of the sums actually advanced by him.

Note.—A creditor has an insurable interest in the life of his debtor to the extent of his interest. Grant v. Kline, 115 Pa. 618, 9 Atl. 150; American Life & Health Ins. Co. v. Robertshaw, 26 Pa. 189; Shaffer v. Spangler, 144 Pa. 223, 22 Atl. 865. If the policy is made payable as the interest of the creditor may appear, the burden is upon him to show that the insurance was upon the creditor's interest. Walker v. West, 4 Pa. Dist. R. 85, 1 Lack. Legal News, 42, 16 Pa. Co. Ct. 99.

For authorities as to what constitutes an insurable interest in the life of another, see also the following editorial notes presenting the authorities on their respective subjects: Insurable interest of wife in husband's life, note to Brick v. Campbell, 10 L. R. A. 259; wife's right to insure life of her husband, note to Metropolitan L. Ins. Co. v. Smith, 53 L. R. A. 817; validity of life insurance for benefit of betrothed wife, note to Alexander v. Parker, 19 L. R. A. 187; right to take life insurance for benefit of stranger, note to Heinlein v. Imperial L. Ins. Co. 25 L. R. A. 627; insurable interest in life of parent or child or other relative by blood, note to Life Ins. Clearing Co. v. O'Neill, 54 L. R. A. 225.

This action was brought by the executor of Mary Behney against John Fehler, to recover insurance moneys received by him under a policy of insurance on the life of plaintiff's testator. Defendant pleaded *non assumpsit,* payment, and set-off, with leave, etc.

The facts appear from the charge of the court to the jury, by McPHERSON, A. L. J.

Plaintiff, *inter alia,* presented the following points:

No question of good faith can arise in this case. The taking out of the policies on the life of Mary Behney by John Fehler, who was a stranger to Mary and without any insurable interest in her life, and the holding of the policies and the payment of the premiums by Fehler to keep them up, made him a speculator in, and the transaction a speculation on, the duration of the life of Mary Behney, and therefore without legal effect; and the verdict of the jury must be in favor of the plaintiff for the amount received by Fehler on the policies, less proper payments and advancements on the security thereof.

*Ans.* That is refused. It asks us to say to you, as a matter of law, that this was a speculative transaction, which we decline to do.

3. The claim of Fehler that he held the policies on a contract with Mary Behney to support her during life and bury her after death is against the policy of the law, as, if such was the case, the transaction was a speculation, or gambling, upon the duration of the life of the insured, in which he had no interest.

*Ans.* As a question of law this is refused. In some cases it might be a speculation; in others a praiseworthy act. As a question of law it is refused.

After the defendant's counsel had made his concluding argument to the jury, but before plaintiff's counsel had begun his argument, the plaintiff's counsel presented the following additional point:

4. The daughter of Mary Behney, Mina Fehler, the wife of Fehler's son, who was living in the house with Fehler at the time, having, as she testified, done and had most of the nursing and care of her mother herself, was not entitled to anything for this without a special contract and makes no claim therefor; and John Fehler could acquire no claim for such nursing and care; and there being no evidence that he made any claim for this or

her board prior to the insurance, there was no debt due him giving him an insurable interest in her life.

The court declined to receive this point, because submitted too late under the rules of the court. After the jury had consulted on their verdict, but before the verdict was taken, counsel for plaintiff asked the court for an exception to its rulings, excluding the additional point, and the exception was noted.

The court charged the jury as follows:

This case presents, perhaps, more than one question of fact for you to determine. Two policies of insurance were taken out upon the life of Mary Behney in favor of John Fehler, the defendant in this case, the two policies amounting to $3,000; and after she died he received the money upon these policies, something over $2,900, I believe.

The first question is: Did John Fehler have an insurable interest in the life of Mary Behney? Did he have a right, to put the question in a little different form, to insure her life for his benefit, in his favor, or to cause an insurance to be taken upon her life in his favor? For the evidence tends to show, if believed by the jury, that it was at her request that these policies were taken out, and without John Fehler's solicitation, or at his instance. The request seems to have come from her, and he does not seem to have been active in having it done.

Now, was there any relationship between these two people? Her daughter was married to his son, and was living with her husband in defendant's house, and that was the only connection between them. And there Mary Behney went after the death of her husband and the breaking up of her home. You will probably find from the evidence, what the evidence will justify you in finding, that she went there to live, and that she went there to make it her home for the rest of her life. She did not stay there all her life, for reasons which appeared in the evidence, but left after having been there for several years, and went to another daughter's, where she remained for some years, being taken back to John Fehler's to be buried from his house, and upon his place.

There is nothing at all in the connection or relationship between these two persons which, of itself, gave John Fehler an insurable interest in her life. So, if there was nothing else in the case except that, we would instruct you to find a verdict for the

plaintiff. But we think you will find the fact to be, as we shall submit it, that John Fehler had an insurable interest in her life to some extent at least; and the evidence which the defendant produced here, and which we submit to you, tends to show that Fehler became or was about to become her creditor after this insurance was taken out. He produced evidence to show that she had been at his house for about a year before the policies were taken out at all, and you will recollect the evidence bearing upon the reason for taking them out, her desire, as testified to, to repay him for what had already been expended, and to secure him for what afterwards might be expended for her care and support. In other words, John Fehler—if you believe that side of the evidence—John Fehler assumed the position of creditor towards this woman, not only for what he had done for her, which of course he was not bound to do, since he was not related to her, and did not owe her any duty of support and maintenance, but also for what he agreed to do. If you so find—if that is the case —that he was her creditor for what he had done in the past, and if he promised to continue these duties in the future, he had an insurable interest in her life—he was then like an ordinary creditor to whom Mrs. Behney, we may say, owed a promissory note; and he would certainly possess an insurable interest in her life. So we say that John Fehler, if you find the facts to be as we have submitted them to you, as we have stated, had a right to insure Mrs. Behney's life—he was her creditor.

The next question is: To what extent had he a right to insure her life? To that there can be only one answer, and that is that a creditor's interest in the life of his debtor is the extent of his debt, and also, of course, the amount which he is obliged to pay to protect that debt; that is, the amount he is obliged to pay to keep up the insurance which does protect that debt. This is justice to the creditor. It pays him for his claim, with interest upon it, of course, the sum of money which he has expended upon the debtor; and he would be entitled to also claim interest for the money which was paid to support the policy. The remainder of it belongs, or ought to belong, to the estate of the person upon whose life the policy was taken out; and that is the case here. What is John Fehler's interest in these two policies, therefore? is the question. It is a question of fact for you to determine under all the evidence in the case; and it depends very largely, as you will see, upon the value which ought to be

paid him for the care and attention and services given to Mrs. Behney by John Fehler, or at John Fehler's house (this care and service and attendance which he procured for her) which he furnished to her. That includes various items, as to which there has been some testimony given, board and clothing and other matters of that sort; and you will remember the testimony about that, and remember the testimony also with regard to the value of these services; and you will further know, as practical men, what weight to give to that testimony, whether it is too high or too low, or whether it can be relied upon.

There is some testimony with regard to certain sums of money that have been expended. Of course as to these there can be no question, if you believe the testimony of the defendant's witnesses. Then of course there is testimony as to the sum of money that was paid for keeping up these policies. As to that, of course, there can be no question. It is admitted, and that will in any event be allowed, with interest upon it. Interest for half the time during which the payments were made, I believe is the rule or practice that seems to have been followed here; and those items would be allowed as credits.

But the serious question, the question that involves the important matter in this case, is the question of the value of the care and attention which she received at John Fehler's hands during the time she was at his house; and upon that you will have to fix a value. You remember when she died and when she left his house; the length of time she was there, and the testimony which will help you to fix the amount of money that ought to be paid for her keeping there; and then it becomes for you a mere matter of calculation to discover whether he has received more money than he ought to have received. After having determined what these items are that should be allowed in accordance with the charge of the court, or the amount of money that he should be allowed for the care and services I have spoken of, it is a mere matter of calculation as to whether he got more money than he ought to have been paid. If he has more in his hands —more than is sufficient to repay these sums under the instructions I have given you, it belongs to the estate of Mrs. Behney. If, on the contrary, he has not received more than enough to pay himself, your verdict ought to be for the defendant.

The two questions are: Was he, when the policies were taken out, a creditor of hers, or did he agree to become a creditor of

hers in the way I have mentioned? Did he agree to keep her and support her and take care of her as long as she lived? If you find that to be so, if he was a creditor, then you pass to the next question. If you find that he was no creditor of hers, then he had no insurable interest in her life, and the plaintiff is entitled to recover the full amount which he [Fehler] received, less the amount which he paid for keeping up the policies, for that would be the only credit that he would be entitled to in that case.

The weight of the evidence seems to be in his [Fehler's] favor, of his being a creditor of hers to a certain extent at least; and I assume that the weight of the evidence will govern the jury, and I assume that they will pass to the important branch of the case, namely: as to how much he was a creditor of hers at the time of her death; because, after all, that is really the important matter in the case.

Verdict and judgment were for defendant.

The assignments of error specified the action of the court in refusing to affirm plaintiff's first and third points and in refusing to receive and instruct the jury upon plaintiff's additional point.

*Bassler Boyer* for plaintiff in error.

*A. W. Ehrgood* and *Josiah Funck* for defendant in error.

PER CURIAM:

Without deciding whether we can review the action of the court in declining to receive the point referred to in the first specification, as no exception was taken at the time of its rejection, we are, nevertheless, of the opinion that the point cannot be affirmed, so the plaintiff sustained no injury. The other points were correctly answered, and the case was accurately submitted to the jury.

Judgment affirmed.